# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

U.S. BANK N.A.,

    Plaintiff,

vs.

THUNDER PROPERTIES, INC. et al.,

    Defendants.

3:16-cv-00700-RCJ-CBC

**ORDER AND JUDGMENT**

This case arises out of a homeowners' association foreclosure sale under Chapter 116 of the Nevada Revised Statutes. Pending before the Court is a motion to reconsider the grant of summary judgment to Plaintiff.

## I.    FACTS AND PROCEDURAL HISTORY

In March 2006, Alan Yuen and Ka Man Cheng made a promissory note for $248,240 ("the Note"), secured by a deed of trust ("the DOT"), in exchange for funds in that amount to purchase real property at 245 Dawson Jacob Lane, Reno, Nevada, 89503 ("the Property"). (Compl. ¶¶ 9–12, ECF No. 1). Plaintiff U.S. Bank, as trustee for a mortgage-backed security, is the current beneficiary of the Note and DOT. (*Id.* 1, ¶ 13). In February 2014, an agent of Defendant Rancho San Rafael Townhomes, Phase II Homeowners Association ("the HOA") sold the Property at auction under Chapter 116 to Defendant Thunder Properties, Inc. ("Thunder") for

$11,700. (*Id.* ¶¶ 6, 5–19). The fair market value of the Property at the time was at least $167,000. (*Id.* ¶ 20).

US Bank sued Thunder and the HOA in this Court to quiet title to the Property, i.e., for a declaration that the February 2014 sale did not extinguish the DOT. US Bank argued that the sale cannot have extinguished the DOT under the Due Process Clause of the Fourteenth Amendment of the U.S. Constitution, and that the sale was commercially unreasonable under state law. The HOA moved to dismiss, disclaiming any interest in the Property, but the Court denied the motion because US Bank had asked in the alternative for the sale to be voided altogether, which implicated an ongoing interest of the HOA. The Court also refused to dismiss for failure to mediate, because although one or more theories upon which the quiet title claim was based potentially implicated a state statute requiring mediation, the failure to exhaust administrative remedies is an affirmative defense, and facts indicating failure to exhaust did not appear on the face of the Complaint. US Bank moved for summary judgment, and Thunder moved for a stay.

After the Court granted summary judgment, denied a stay, and ordered a proposed judgment to be submitted,[1] the Nevada Supreme Court issued *SFR Investments Pool 1, LLC v. Bank of New York Mellon* (*SFR II*), 422 P.3d 1248 (Nev. 2018), ruling that Chapter 116's previous notice scheme required first deed of trust holders to be notified of foreclosure sales via the incorporation of Nevada Revised Statutes section ("NRS") 107.090. Thunder has therefore asked the Court to reconsider summary judgment, arguing that *Bourne Valley Court Tr. v. Wells Fargo Bank, N.A.*, 832 F.3d 1154, 1158–60 (9th Cir. 2016) (holding that the previous notice

---

[1] Plaintiff failed to submit a proposed judgment by May 31, 2018, as ordered, even though Defendant did not move for reconsideration until August 15, 2018.

scheme under Chapter 116 is facially unconstitutional because it required first deed of trust holders to opt in in order to receive notice of an impending sale) is now a nullity. The Court has granted four extensions of time to respond to the motion to reconsider, for a total of 72 days. On the latest due date, the parties filed a stipulation to extend the time 60 more days. The Court denies the motion. The parties argue, as they did before, that a further extension is for the purpose of settlement. But the parties will still be able to negotiate during appeal if the Court denies reconsideration. The pending motion to reconsider has only the effect of tolling the deadline to appeal. There is no basis to stay a judgment for the purpose of settlement, which is the practical effect of delaying a ruling on the motion to reconsider.

## II. LEGAL STANDARDS

Motions to reconsider are generally disfavored. Moreover, under the law-of-the-case doctrine, a court will not generally reconsider issues previously decided by the same court or a higher court in the same case, except in narrow circumstances. *Milgard Tempering, Inc. v. Selas Corp. of Am.*, 902 F.2d 703, 715 (9th Cir. 1990). One such circumstance is an intervening change in the law. *Id.* The Court of Appeals has indicated that its panels may depart from earlier panels' interpretations of state law only upon "intervening controlling authority." *FDIC v. McSweeney*, 976 F.2d 532, 535 (9th Cir. 1992).

## III. ANALYSIS

### A. The Effect of *SFR II* on *Bourne Valley*

Regardless of any ruling by the Nevada Supreme Court, this Court is bound by *Bourne Valley* on all federal issues unless and until the Court of Appeals sitting en banc or the U.S. Supreme Court indicates otherwise. The Supreme Court has already once denied certiorari, *Bourne Valley Court Tr. v. Wells Fargo Bank, N.A.*, 137 S. Ct. 2296, 2297 (2017), despite the Nevada Supreme Court's intervening ruling contrary to *Bourne Valley* on the issue of state

action, *see Saticoy Bay LLC v. Wells Fargo Home Mortg.*, 388 P.3d 970, 973–74 (Nev. 2017). The Court of Appeals' ruling on the federal issue of whether a Chapter 116 sale implicates state action under the Due Process Clause of the Fourteenth Amendment has not been abrogated. At most, the recent decision of the Nevada Supreme Court reinterpreting the relevant state statutes requires this Court to reexamine the due process issue anew.

**B.     The Facial and As-Applied Constitutionality of Chapter 116**

"An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950). The *Mullane* Court ruled that under this standard notice by publication of an action to settle the accounts of a common trust fund was constitutionally insufficient to inform those beneficiaries whose names and addresses were known. *Id.* at 315; *see also, e.g.*, *Walker v. City of Hutchinson*, 352 U.S. 112 (1956) (ruling that publication was insufficient under the Due Process Clause to provide reasonable notice of condemnation proceedings to a landowner whose name was known). Likewise, a governmental body conducting a tax sale must provide notice to junior lienors under the standards of *Mullane*. *Mennonite Bd. of Missions v. Adams*, 462 U.S. 791, 798 (1983). As the Court has noted, an HOA foreclosure sale under NRS 116.3116 is analogous to the tax sale in *Mennonite Board of Missions*:

> [A] mortgagee possesses a substantial property interest that is significantly affected by a[n HOA] sale. Under [Nevada] law, a mortgagee acquires a lien on the owner's property . . . . A mortgagee's security interest generally has priority over subsequent claims or liens attaching to the property, and a purchase money mortgage takes precedence over virtually all other claims or liens including those which antedate the execution of the mortgage. The [HOA] sale immediately and drastically diminishes the value of this security interest by granting the [HOA]-sale purchaser a lien with priority over that of all other creditors. Ultimately, the [HOA]

> sale may result in the complete nullification of the mortgagee's interest, since the purchaser acquires title free of all liens and other encumbrances . . . .
>
> . . . .
>
> Neither notice by publication and posting, nor mailed notice to the property owner, are means "such as one desirous of actually informing the [mortgagee] might reasonably adopt to accomplish it." Because they are designed primarily to attract prospective purchasers to the tax sale, publication and posting are unlikely to reach those who, although they have an interest in the property, do not make special efforts to keep abreast of such notices. Notice to the property owner, who is not in privity with his creditor and who has failed to take steps necessary to preserve his own property interest, also cannot be expected to lead to actual notice to the mortgagee. The County's use of these less reliable forms of notice is not reasonable where, as here, "an inexpensive and efficient mechanism such as mail service is available."
>
> Personal service or mailed notice is required even though sophisticated creditors have means at their disposal to discover whether [HOA dues] have not been paid and whether [HOA] sale proceedings are therefore likely to be initiated. In the first place, a mortgage need not involve a complex commercial transaction among knowledgeable parties, and it may well be the least sophisticated creditor whose security interest is threatened by a tax sale. More importantly, a party's ability to take steps to safeguard its interests does not relieve the State of its constitutional obligation.

*Id.* at 798–99 (citations omitted). In summary, a foreclosing entity must make reasonable attempts—meaning attempts that a person desirous of actually informing the interested party might take, e.g., via personal service or mail—to notify known or reasonably identifiable parties who stand to lose security interests; publication or other notice schemes requiring special efforts of interested parties are not usually reasonable. *Id.*

The Court of Appeals has ruled that Chapter 116 foreclosure sales constitute state action under the Due Process Clause. The Nevada Supreme Court's recent ruling as to what notice state law previously required does not affect the applicability of the Due Process Clause to Chapter 116 sales but only the analysis of whether Chapter 116 was previously sufficient under the Due Process Clause. The question is whether the notice previously required was notice "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency

of the action and afford them an opportunity to present their objections." *Mullane*, 339 U.S. at 314. The Court of Appeals in *Bourne Valley* determined that because Chapter 116 required a first deed of trust holder to affirmatively request notice in order to receive it, the statutes were facially invalid under the Due Process Clause. The Nevada Supreme Court has now ruled that notice to a first deed of trust holder of the fact of an impending Chapter 116 sale was required without opting in.[2] But that is not necessarily enough to satisfy due process "under all the circumstances" in the unique context of Chapter 116.

Where a lienor foreclosing with the power of the state makes reasonable attempts to notify interested parties of the time and place of the sale, it usually satisfies its obligations under the Due Process Clause without more. That is because in a typical situation, e.g., where a municipality seeks to foreclose a tax lien, the lien being foreclosed is senior to all other encumbrances by law, and notice of an impending tax sale puts interested parties on notice that if the entire tax delinquency (as specified in the notice of default and/or notice of sale) is not satisfied before the sale, all other security interests against the property will be extinguished. A junior lienor therefore has the opportunity to present his objections upon mere notice of the time and place of sale. He knows that he must satisfy the entire delinquency to prevent the sale and the extinguishment of his security interest. But an HOA lien under Chapter 116 is atypical in a fundamental and critical respect. It consists of two legally distinct pieces: one senior to a first deed of trust ("the superpriority piece"), and one junior thereto ("the subpriority piece"). *SFR Invs. Pool 1, LLC v. U.S. Bank, N.A.* (*SFR I*), 334 P.3d 408, 411 (Nev. 2014). The Nevada

---

2 The Court disagrees with that interpretation for reasons given in previous orders in this case and others but is bound by state appellate courts' rulings on matters of state law. *See, e.g.*, *Christiana Tr. v. K&P Homes*, 288 F. Supp. 3d 1039, 1041–43 (D. Nev. 2018).

Supreme Court has declined to address whether Chapter 116 previously required the superpriority piece to be specified in the notice of sale or otherwise, *SFR II*, 422 P.3d at 1250 n.2, 1253 n.5, but it is clear that the statute the *SFR II* Court determined was incorporated into the previous notice scheme under Chapter 116 required only "notice of time and place of sale," Nev. Rev. Stat. § 107.090(4).

Because of the dual nature of a Chapter 116 lien, notice only of the total amount of such a lien is not necessarily constitutionally sufficient under all the circumstances as to a first deed of trust holder, whose lien is partially senior to the HOA's lien.[3] First deed of trust holders cannot reasonably have been expected to satisfy not only the superpriority piece, but also the subpriority piece. As a general matter, it is not reasonable to require a lienholder to satisfy a junior lien in order to protect a senior interest. It is particularly unreasonable where the subpriority piece greatly exceeds the superpriority piece. But that is precisely what a notice scheme not mandating that the superpriority piece of a mixed-priority lien be specified forces a mixed-priority lienholder to do. A notice lacking this critical information might not be constitutionally reasonable, because it does not give the interested party the information required to protect his interest without paying additional amounts for which he is not liable and which are junior to his own interest, or without taking an incredible risk that his estimation of the superpriority piece will be found to have been insufficient in a later proceeding. Such circumstances are not present in traditional foreclosures, where the lien being foreclosed is of unified priority and is specified in the notice of default, the notice of sale, and/or at the sale itself.

---

[3] Chapter 116 liens are almost always mostly junior to first deeds of trust due to fees greatly exceeding the nine months of delinquent HOA dues that are senior to first deeds of trust. *See* Nev. Rev. Stat. § 116.3116.

It could be argued that bare notice of an impending sale is enough to satisfy due process. After all, notice of an impending sale warns a first deed of trust holder that he must take action of some kind to prevent losing his interest, and that may require him to make further inquiries. But in many of these cases where a first deed of trust holder actually received notice of an impending sale, directly or indirectly, it has made such further inquiries, requesting the HOA or its agent to identify the superpriority piece so that it may protect the first deed of trust by tendering that amount prior to the sale. The Court cannot recall a case where an HOA or its agent has done anything but refuse when so asked, and certainly no case where the superpriority piece was specified on the initiative of the HOA or its agent, whether in the notice of sale or some other writing, or even by the auctioneer at the sale itself. Events occurring after notice is initially dispatched can be relevant. Just as one "desirous of actually informing" an interested party would not simply say "I tried" after watching a postman drop a notice down a storm drain, *Jones v. Flowers*, 547 U.S. 220, 229 (2006), a person actually desirous of giving an interested party with a mixed-priority lien the opportunity to cure the superpriority piece of the default would not simply say "no" or "guess" when asked to specify the superpriority piece after providing notice only of the total delinquency.[4] A person "actually desirous" of giving a first deed of trust holder the information necessary to protect his interest would specify the superpriority piece, at least where requested. It may or may not be unreasonable to provide bare notice of a sale and await a first deed of trust holder's inquiry as to the superpriority piece, but it is unreasonable not to specify the superpriority piece if asked. The Court finds that where a notice of sale specifies

---

4 In many cases, first deed of trust holders have in fact "guessed" after being refused an answer, tendering the amount they believed to be senior to the first deed of trust. The Court has sometimes granted summary judgment based on such a tender. But the Court has done so simply because pre-sale tender was made, regardless of notice, not because it was constitutionally reasonable for a foreclosing entity to make a mixed lienholder guess the superpriority amount.

only the total amount of a default that by law is only partially in priority to another's lien, the refusal of the foreclosing entity to specify the superpriority amount to the other lienholder when so requested is a denial of the opportunity to present objections. Despite initial efforts, "[f]ailure to follow up [is] unreasonable" where a need to follow up has become evident. *Id.* A request to specify the superpriority piece of a Chapter 116 lien—the only portion of the lien that must be satisfied to protect the first deed of trust—makes clear the need to follow up.

### C. The Facts of Notice in the Present Case

Ultimately, the Court need not in this case determine whether the previous notice scheme as recently reinterpreted remains constitutionally suspect, either facially or as applied here, because the evidence previously submitted does not indicate that any party gave US Bank or its predecessor-in-interest notice of the time and place of sale that the Nevada Supreme Court has now determined it was required to give. In its opposition to US Bank's motion for summary judgment, Thunder adduced no evidence of notice having been mailed to US Bank or its predecessor-in-interest as to the DOT. Thunder previously argued that US Bank had all the notice to which it was entitled by virtue of the recordation of the notice of sale,[5] or alternatively, that the "return doctrine" under state law obviated or forgave any federal constitutional offense, arguments the Court has rejected. Thunder adduced no evidence tending to show that the HOA or its agent had attempted to notify US Bank or any predecessor-in-interest of the DOT of the

---

5 Thunder characterized recordation of the notice of sale as "actual notice." That is not so. Recordation is properly characterized as "constructive notice," as contradistinguished from "actual notice." *See, e.g.*, David A. Thomas, *Thompson on Real Property* § 92.09(c), at 173 (2nd Thomas ed. 2002). Thunder has never produced any evidence in this case either of actual notice or constitutionally reasonable attempts at actual notice, but only of the constructive notice provided by recordation or publication that the federal courts have long held insufficient under the Due Process Clause where the address of an interested party is known or readily ascertainable.

time and place of the sale by mail or any other constitutionally reasonable method. Thunder has not in its present motion changed its argument or proffered any additional evidence. There is no basis to reconsider summary judgment. Even assuming the Court is free to reexamine the due process issue and that the previous notice scheme under Chapter 116 (as recently reinterpreted by the Nevada Supreme Court) passed constitutional muster as to first deed of trust holders on its face, there is no evidence that the HOA or its agent provided the notice to US Bank or its predecessor-in-interest that the Nevada Supreme Court has now determined was required.

Thunder previously argued that certain recitals in the foreclosure deed as to notice having been given were conclusive under state law. But reasonable notice is a federal constitutional requirement of factual inquiry "under all the circumstances" that cannot be obviated by presumptions arising under state law (or even federal statute). *See Jones*, 547 U.S. at 226–27 (quoting *Mullane*, 339 U.S. at 314); *Mennonite Bd. of Missions*, 462 U.S. at 799; *United States v. Simmons*, 476 F.2d 33, 36–37 (9th Cir. 1973) (citing *United States v. Bowen*, 414 F.2d 1268, 1273 (3d Cir. 1969)) (holding that under the Due Process Clause, laws establishing presumptions of notice may only be applied, if possible to so construe them, as creating rebuttable presumptions, not conclusive presumptions). Unlike in *Simmons*, the law at issue here cannot potentially be saved from constitutional infirmity by reading it as establishing a rebuttable presumption, because it explicitly states that the presumption established thereunder is "conclusive." Nev. Rev. Stat. § 116.31166(1) (1991).[6]

///

///

---

6 Similar rebuttable- or conclusive-notice statutes have not been subject to due process challenges, because, unlike Chapter 116, those statutes did not involve state action. *See, e.g.*, *Moeller v. Lien*, 30 Cal. Rptr. 2d 777, 783 (Ct. App. 1994) (citing Cal. Civ. Code § 2924)).

**CONCLUSION**

IT IS HEREBY ORDERED that the Stipulation to Extend Time (ECF No. 65) and the Motion to Reconsider (ECF No. 55) are DENIED.

IT IS FURTHER ORDERED that the Order (ECF No. 66) is VACATED. The entry of that order was a clerical error. *See* Fed. R. Civ. P. 60(a).

IT IS HEREBY DECLARED AND ADJUDGED that the Deed of Trust recorded as Instrument No. 3357442 in the Washoe County Recorder's Office, encumbering real property at 245 Dawson Jacob Lane, Reno, Nevada, 89503, APN 003-750-37, was not extinguished by the Trustee's Deed recorded as Instrument No. 4332261 in the Washoe County Recorder's Office.

IT IS FURTHER ORDERED that the Clerk shall close the case.

IT IS SO ORDERED.

Dated this 21st day of November, 2018.

_____
ROBERT C. JONES
United States District Judge